IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


JOHN HOMER DOCHERTY, IV,
       Petitioner,

vs.                                  Case No.:  3:11cv576/RV/EMT

KENNETH S. TUCKER,
       Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 1).  Respondent filed an answer and relevant portions of the state court record (docs. 9, 11–13).  Petitioner filed a reply (doc. 17).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* docs. 11–13).[1]  Petitioner was indicted in the Circuit Court in and for Escambia County, Florida, Case No. 2006-CF-5719, on one count of first degree premeditated murder (Ex. A

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (*see* docs. 11–13).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

at 1–2).  Following a jury trial, he was found guilty of manslaughter (Ex. A at 35, Exs. B, C, D).  On February 21, 2008, Petitioner was adjudicated guilty and sentenced to fifteen (15) years of imprisonment, with pre-sentence jail credit of 464 days (Ex. A at 38–50, 57–63).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D08-1342 (Ex. E).  The First DCA affirmed the judgment per curiam without written opinion on May 4, 2009, with the mandate issuing May 20, 2009 (Ex. H).  Docherty v. State, 7 So. 3d 537 (Fla. 1st DCA 2009) (Table).  Petitioner did not seek further review.

On July 16, 2009, Petitioner filed a petition for writ of habeas corpus in the First DCA, alleging ineffective assistance of appellate counsel (Ex. I ).  The First DCA denied the petition on the merits on August 20, 2009 (Ex. K).  Docherty v. State, 16 So. 3d 268 (Fla. 1st DCA 2009) (Mem).

On August 27, 2009, Petitioner filed a motion for postconviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. L at 1–44).  In an order rendered April 1, 2010, the state circuit court struck the motion as facially insufficient, without prejudice to Petitioner's filing an amended motion within sixty days (id. at 52–54).  Petitioner filed an amended motion on May 21, 2010 (id. at 55–91).  The state circuit court summarily denied it on November 4, 2010 (id. at 111–24).  Petitioner appealed the decision to the First DCA, Case No. 1D11-0272 (id. at 219–20).  The First DCA affirmed the judgment per curiam without written opinion on April 12, 2011, with the mandate issuing May 10, 2011 (Ex. N).  Docherty v. State, 60 So. 3d 390 (Fla. 1st DCA 2011) (Table).

Petitioner filed the instant federal habeas action on November 28, 2011 (doc. 1).  Respondent concedes the petition appears timely (doc. 9 at 2).

II.    STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and

Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19.

In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

---

[2] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Case No.:  3:11cv576/RV/EMT

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); <u>Ramdass v. Angelone</u>, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  <u>Neelley v. Nagle</u>, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* <u>Parker v. Head</u>, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  <u>Lockyer</u>, 538 U.S. at 73 (quoting <u>Williams</u>, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  <u>Early v. Packer</u>, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting <u>Williams</u>, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  <u>Williams</u>, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it.  <u>Holland v. Jackson</u>, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683

(2004) (per curiam); *cf.* <u>Bell v. Cone</u>, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." <u>Putman v. Head</u>, 268 F.3d 1223, 1241 (11th Cir. 2001).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'" <u>Gill v. Mecusker</u>, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting <u>Williams</u>, 529 U.S. at 411) (citing <u>Harrington v. Richter</u>, — U.S. —, 131 S. Ct. 770, 786–87 (Jan. 19, 2011)).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  *See* <u>Gill</u>, *supra* at 1291 (citing <u>Harrington</u>, 131 S. Ct. at 786).  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See* <u>Harrington</u>, 131 S. Ct. at 786; *see also* <u>Gill</u>, *supra,* at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless

objectively unreasonable in light of the evidence presented in the state-court proceeding." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see e.g.* <u>Miller-El</u>, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); <u>Jones v. Walker</u>, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").  The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See* <u>Gill</u>, 633 F.3d at 1292.  A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See* <u>Panetti v. Quarterman</u>, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); <u>Jones</u>, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

III.    EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[3] thereby giving

---

[3] Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the

the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has provided lower court with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982).  In Anderson, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which

---

judgment of a State court shall not be granted unless it appears that–
  (A)  the applicant has exhausted the remedies available in the courts of the State; or
  (B) (i)  there is an absence of available State corrective process; or
   (ii)  circumstances exist that render such process ineffective to protect the rights of the
applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

"the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  Anderson, 459 U.S. at 7 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim.  Id., 459 U.S. at 7 and n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  Id.

       Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364.  The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[4]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  Duncan, 513 U.S. at 365–66.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).  In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  Id., 541 U.S. at 32.  This language, while not part of the Court's holding, provides helpful instruction.  With regard to this language, the Eleventh Circuit explained in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

       _____

       [4] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.  513 U.S. at 366.

If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion. However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)). This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[5]

The Eleventh Circuit, prior to Duncan, had broadly interpreted the "fair presentation" requirement. After Duncan, however, the Eleventh Circuit has taken a more narrow approach. For example, in Zeigler v. Crosby, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution. 345 F.3d 1300, 1307 (11th Cir. 2003). The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words:  "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution. Id. at 1308 n.5. The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases. The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us." Id.

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally

---

[5] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005). The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. Id.

barred from federal review.  *See* O'Sullivan, 526 U.S. at 839–40, 848; Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999).  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  *See* Coleman v. Thompson, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine.  Bailey, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question.  *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner.  Ford v. Georgia, 498 U.S. 411, 424–25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision.  Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001).  First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[6]  Second, the state

---

[6] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits.  Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law.  Third, the state procedural rule must be adequate. *Id.*  The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Id.*

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice.  Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)).  To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  Schlup, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

*Id.*

Within this framework, the court will review Petitioner's claims.

IV.   PETITIONER'S CLAIMS

A.    Ground One:  "Trial court erred when violating Petitioner's Sixth and Fourteenth Amendment rights to a fair trial and due process of law."

Petitioner contends the trial court erred by denying defense counsel's motion for judgment of acquittal ("JOA") (doc. 1 at 14–16).[7]  He contends the State never proved corpus delecti or the

---

[7] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

first element of manslaughter, that is, that the victim was dead (*id.*).  He contends the trial court's
denial of the motion for JOA deprived him of his Sixth and Fourteenth Amendment rights to a fair
trial and due process (*id.* at 16).  Petitioner states he raised this claim in state court (*id.* at 14).

Respondent contends although Petitioner presented a sufficiency of the evidence claim on
direct appeal of his conviction, he failed to present the federal nature of the claim to the state court
(doc. 9 at 3–5). Therefore, the federal due process claim he presents in his federal habeas petition
was not exhausted (*id.* at 2–4).

The state court record demonstrates that in Petitioner's brief on direct appeal of his
conviction, he argued his conviction was not supported by competent, substantial evidence showing
that the victim was dead and that the death was a result of a criminal act of Petitioner (Ex. E at
26–32).  He argued that the State's evidence was entirely circumstantial, and that he had raised a
reasonable hypothesis of innocence (*id.* at 27–28).   He contended the State failed to present
competent, substantial evidence inconsistent with his theory of innocence, as required under Florida
law (*id.* at 28–32).  Therefore, his conviction should be reversed (*id.*).

Petitioner framed his claim in terms of state law without making any reference to federal law,
and in the body of his argument he made no specific reference to the United States Constitution or
federal law, and he cited no federal cases.  He argued Florida law only.  Nothing in Petitioner's brief
put the state court on notice that the issue was being presented as a federal constitutional claim.
Further, the legal standard relied upon by Petitioner in his brief is specific to Florida law; the federal
sufficiency of the evidence standard, set forth in <u>Jackson v. Virginia</u>, 443 U.S. 307, 99 S. Ct. 2781,
61 L. Ed. 2d 560 (1979), does not include a requirement that the evidence exclude every reasonable
hypothesis of innocence, *see* <u>United States v. Herrera</u>, 931 F.2d 761, 763 (11th Cir. 1991) (evidence
need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every
conclusion except that of guilt, provided that a reasonable trier of fact could find that the evidence
established guilt beyond a reasonable doubt) (citations omitted). Therefore, the undersigned

concludes Petitioner's federal due process challenge to the sufficiency of the evidence was not fairly presented to the state court and is thus unexhausted.[8]

Now, any further attempt at exhaustion in the state courts would be futile, because Petitioner's claims would be procedurally barred under Florida law.  *See* Rodriquez v. State, 919 So. 2d 1252, 1262 n.7 (Fla. 2005) (holding that issues were procedurally barred because they should have been, but were not, raised on direct appeal); Smith v. State, 445 So. 2d 323, 325 (Fla. 1983) ("Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack.").

As discussed *supra*, to overcome a procedural default such that this court may consider the merits of his claim, Petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice.  Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  Petitioner appears to argue the procedural default was caused by defense counsel's failure to adequately argue a motion for JOA at trial (*see* doc. 1 at 14).  Although ineffective assistance of counsel which rises to the level of a constitutional deprivation can serve as cause for purposes of a procedural default, the issue of ineffective assistance must first be presented as an independent state claim and

---

[8] Even if Petitioner had not relied upon Florida's special circumstantial evidence standard, and he had simply challenged the sufficiency of the evidence under the standard applied in non-circumstantial cases, which is the same as the federal standard, his argument would still have been insufficient to alert the state court to a federal claim, in light of his failure to reference the federal Constitution or any federal law, and his failure to cite any state cases relying on federal law.  *See, e.g.*, Ramos v. Sec'y, Dep't of Corr., 441 F. App'x 689 (11th Cir. 2011) (petitioner's federal sufficiency of evidence claim was not exhausted where petitioner made only passing reference to federal constitutional right to due process in arguing that trial court improperly denied motion for judgment of acquittal because State failed to sufficiently prove premeditation element of murder); Pearson v. Sec'y,  Dep't of Corr., 273 F. App'x 847, 850 (11th Cir. 2008) (petitioner's federal sufficiency of evidence claim was not exhausted where petitioner cited exclusively to Florida cases in state court and addressed Florida law in all of his substantive arguments, even though Florida courts assess sufficiency of evidence under standard identical to federal standard); Cook v. McNeil, 266 F. App'x 843, 845–46 (11th Cir. 2008) (petitioner did not alert the state court to the alleged federal nature of his sufficiency of the evidence claim and therefore failed to exhaust his federal due process claim; even though petitioner moved for judgment of acquittal and although Florida courts assess the sufficiency of the evidence under the standard applied in Jackson v. Virginia, 443 U.S. 307 (1979), petitioner cited exclusively to the state cases and all of his substantive arguments addressed Florida law; "the tenor of [petitioner's] narrow arguments that challenged the characterization of his knife and the sequence of his actions under the Florida statute did not bring a federal claim about due process to the attention of the state appellate court.").  *But see* Mulinix v. Sec'y for Dep't of Corr., 254 F. App'x 763 (11th Cir. 2007) (petitioner's federal sufficiency of evidence claim was exhausted where petitioner presented identical argument to state and federal courts, and Florida courts' sufficiency of evidence standard was identical to federal standard).  The undersigned cites unpublished opinions of the Eleventh Circuit only as persuasive authority and recognizes that the opinions are not considered binding precedent.  *See* 11th Cir. R. 36-2.

exhausted in the state courts.  *See* Murray, 477 U.S. at 488–89 (a claim of ineffective assistance of counsel must first be presented as an independent state claim and exhausted in the state courts, before the claim may be used on federal habeas review to show cause); Orazio v. Dugger, 876 F.2d 1508, 1511 (11th Cir. 1989).

In this case, Petitioner presented a claim of ineffective assistance of trial counsel in his amended Rule 3.850 motion, alleging counsel's motion for JOA was "bare bones" and failed to properly preserve the issue for appeal (Ex. I at 58–61).  He contended trial counsel should have argued that the State failed to prove the victim was dead, and that an act of the defendant would or could have caused her death (*id.*).  He further contended trial counsel should have argued the State failed to overcome the reasonable hypothesis of innocence presented by the defense at trial (*id.*). Petitioner did not, however, argue that trial counsel was deficient to failing to preserve a federal due process challenge to the sufficiency of the evidence.  Additionally, although Petitioner presented a claim of ineffective assistance of appellate counsel to the First DCA, alleging appellate counsel was ineffective for failing to argue on direct appeal that the State failed to prove the elements of manslaughter by competent substantial evidence (*see* Ex. I at 7–10), he did not argue that appellate counsel was ineffective for failing to raise a federal due process challenge to the sufficiency of the evidence.  Therefore, Petitioner's claims of ineffective assistance of trial and appellate counsel cannot serve as cause for the procedural default of Ground One.  Petitioner failed to demonstrate he is entitled to review of his claim through any other recognized exception to the procedural bar; for example, he has not proffered new reliable evidence which, if presented to the jury, would more likely than not have resulted in an acquittal.  Therefore, Ground One is procedurally defaulted and will not be considered by this court.

B.    Ground Two:  "Trial court erred when violating Petitioner's Sixth and Fourteenth Amendment rights to a fair trial and due process of law."

Petitioner contends the trial court erred by allowing the jurors to go home for the evening after deliberations began (doc. 1 at 14, 17–19).  Petitioner asserts after the jury began deliberations, they sent a note to the judge stating they could not reach a verdict soon and inquired as to their options (*id.* at 17).  He asserts that the judge, with the agreement of the prosecutor and defense counsel, excused the jurors for the evening and reminded them of "their admonitions" (*id.*).

Petitioner contends neither the Florida Rules of Criminal Procedure nor Florida statutes expressly authorized separation of the jurors once deliberations began, except for "exceptional circumstances of emergency, accident, or other necessity" (*id.* at 18).  Petitioner argues there was no way to ensure the jurors were insulated from subtle, improper influences, even if they obeyed the judge's admonitions that they avoid news reports and conversations about the case (*id.* at 18–19).  Petitioner states he did not raise this claim in state court (*id.* at 14).

Respondent contends Petitioner did not present this claim to the state courts, and the proper method for doing so was on direct appeal (doc. 9 at 6–7).  Therefore, the claim is unexhausted and now procedurally defaulted (*id.*).  Respondent contends Petitioner cannot claim ineffective assistance of appellate counsel as cause for the procedural default, because he did not present such a claim to the First DCA in his state habeas petition (*id.* at 7).

In Petitioner's reply, he argues he received ineffective assistance of trial counsel for failing to preserve the issue for appeal, and ineffective assistance of appellate counsel for failing to present it on direct appeal (doc. 1 at 20; doc. 17 at 8–10).

Respondent's exhaustion argument is supported by the record.  Petitioner did not present, on direct appeal or otherwise, a federal claim regarding the trial court's excusing the jury after deliberations began.  Further, the issue may no longer be litigated under state procedural rules, because direct appeal was the proper method of presenting the claim to the state courts, and a second direct appeal is not available.  Therefore, the claim is considered procedurally defaulted, that is, procedurally barred from federal review.  *See* O'Sullivan, 526 U.S. at 839–40, 848; Bailey, 172 F.3d at 1302–03.  Although Petitioner alleges ineffective assistance of trial and appellate counsel as cause for the procedural default, he did not present either of these ineffective assistance of counsel claims to the state courts (*see* Ex. I at 1–43, Ex. L at 55–91).  Therefore, neither of these claims may serve as cause for the procedural default.  *See* Murray, 477 U.S. at 488; Orazio, 876 F.2d at 1508. Petitioner has not otherwise shown he is entitled to federal review of this claim; therefore, it will not be further considered.

     C.    <u>Ground Three:  "Trial counsel was prejudicially ineffective for failing to either objecting [sic] to or request a curative instruction on incorrect and confusing Allen charge."</u>

Ground Four:  "Trial counsel was prejudicially ineffective for failing to object to or request a mistrial."[9]

Petitioner asserts the jury returned from deliberations and informed the court they would not be able to agree on a verdict (doc. 1 at 20–24).  He states the court gave an Allen charge,[10] but improperly instructed the jury, "We are all aware that it is illegally permissible for a jury to disagree," instead of properly instructing the jury,  "We are all aware that it is legally permissible for a jury to disagree" (id.).  The trial court further instructed the jury, "There are two things a jury can lawfully do:  agree on a verdict or disagree on what the facts of the case may truly be.  There is nothing to agree about on the law.  The law is as I told you." (id.).  The court also stated, "I only have one request of you.  By law I cannot demand this of you, but I want you to go back into the jury room then take turns telling each other about any weakness of your own position.  You should not interrupt each other or comment on each other's views until each of you has had a chance to talk.  After you have done that, if you simply cannot reach a verdict, then return to the courtroom and I will declare this case mistried and we'll discharge you."(id.).  Petitioner contends there is a reasonable probability the trial court's instructions and statements confused or misled the jury to believe it was illegal for them to disagree (id.).  Petitioner contends defense counsel was ineffective for failing to object to the trial court's erroneous Allen charge and request a mistrial based upon the court's requiring the jury to continue deliberations despite their notifying the court of their inability to reach a verdict (id.).  Petitioner states he raised Ground Three in his Rule 3.850 motion but did not raise Ground Four in state court (id. at 20).

Respondent argues Petitioner exhausted these claims by raising them as Ground Nine in his amended Rule 3.850 motion (doc. 9 at 7–9).  Respondent contends the state court's adjudication was not contrary to or an unreasonable application of clearly established federal law (id.).

1.      Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668 (1984).  To obtain relief under Strickland, Petitioner must

---

[9] The court has consolidated Grounds Three and Four for organizational purposes.

[10] Allen v. United States, 164 U.S. 492, 17 S. Ct. 154, 41 L. Ed. 528 (1896).

show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 687–88. If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697.

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)). The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688–89. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do.'" Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15). Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994). Counsel's performance is deficient only if it is "outside the wide range of professional competence." Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ." Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317). Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'" *Id.* (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high. *See* Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002). The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some

conceivable effect on the outcome of the proceeding.'" *Id.* (quoting Strickland, 466 U.S. at 693). However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not, or prove by a preponderance of evidence," that counsel's errors affected the outcome.  Strickland, 466 U.S. at 693–94.  Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694.  Indeed, it would be "contrary to" the law clearly established in Strickland for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence.  Williams v. Taylor, 529 U.S. at 405–06.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. Strickland, 466 U.S. at 694–95.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.  Further, when the claimed error of counsel occurred at the guilt stage of trial (instead of on appeal), Strickland prejudice is gauged against the outcome of the trial, not on appeal.  *See* Purvis v. Crosby, 451 F.3d 734, 739 (11th Cir. 2006) (citing Strickland, 466 U.S. at 694–95).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  Strickland, 466 U.S. at 698; Collier v. Turpin, 177 F.3d 1184, 1197 (11th Cir. 1999).

2.      Federal Review of State Court Decision

Petitioner raised his ineffective assistance of counsel claims as Ground Nine in his amended Rule 3.850 motion (Ex. L at 89–90).  In the state circuit court's written decision denying the motion, the court correctly stated the deficient performance and prejudice prongs of the Strickland standard as the legal standard applicable to claims of ineffective assistance of counsel (*id.* at 2).  The court adjudicated Ground Nine of the motion as follows:

In this claim, the Defendant asserts that his counsel was ineffective for failing to object [to] an allegedly improperly [sic] <u>Allen</u>[FN 3: <u>Allen v. United States</u>, 164 U.S. 492 (1896)] charge.  The record conclusively demonstrates that the Defendant is not entitled to relief as to this claim.

The record reflects that this Court gave the <u>Allen</u> charge contained in the Florida Standard Jury Instructions in Criminal Cases.  <u>Attachment 5</u>, at 469–472; Fla. Std. Jury Instr. (Crim.) 4.1.  However, the transcript reflects that the Court at one point stated "We are all aware that it is *illegally* permissible for a jury to disagree." <u>Attachment 5</u>, at 470.  Clearly, the correct language is that "We are all aware that it is *legally* permissible for a jury to disagree."

Even presuming, for the purposes of evaluating the validity of this claim of ineffective assistance of counsel, that the transcript is accurate regarding whether the Court used the term "illegally," the Defendant is not entitled to post-conviction relief.  Viewing the entire instruction given by the Court as contained in the transcript, there is no reasonable probability that the jury was misled into believing that it was not permitted to disagree and was required to arrive at a unanimous verdict.

The Court instructed that "There are two things a jury can *lawfully* do:  Agree on a verdict *or disagree on what the facts of the case may truly be*."  <u>Attachment 5</u>, at 470–471 (emphasis added).  Moreover, the Court stated that "if you disagree over what you believe the evidence showed, then only you can resolve that conflict *if it is to be resolved*."  <u>Id.</u> (emphasis added).  The Court further instructed the jury that "if you simply cannot reach a verdict, then return to the courtroom and I will declare this case mistried and we'll discharge you with my sincere appreciation for your services."  <u>Attachment 5</u>, at 471.

Therefore, the record demonstrates that there is no reasonable probability the jury was misled into believing that it was required to render a verdict.  There is no reasonable probability the Court, by its instructions, denied the Defendant his right to a hung jury.  Therefore, because the Defendant was not prejudiced, the claim should be denied.

(Ex. L at 122–23).  Petitioner appealed the decision to the First DCA, and the appellate court affirmed the lower court's decision without written opinion (Ex. N).

The state court record reflects that the jury began deliberations at 3:57 p.m. on February 13, 2008 (Ex. PD-1, docket entry #172, 02/13/2008).  At 9:46 p.m., the jurors sent a note to the court stating, "We can not unanimously come to a verdict anytime soon.  What are our options?" (Ex. PD-1, docket entry #172, 02/13/2008, Ex. A at 22, Ex. D at 459).  The court, the prosecutor, and defense

counsel agreed that the jury did not appear deadlocked, so with the agreement of the prosecutor and defense counsel, the court adjourned the proceedings and allowed the jury to continue their deliberations at 8:00 a.m. the next morning (Ex. D at 459–63). The next morning, the jury deliberated from 9:00–10:00 a.m., at which time they sent a note to the court which read, "We will not be able to agree on a verdict." (Ex. PD-1, docket entries ## 188, 189, 02/14/2008, Ex. A at 23, Ex. D at 469). The prosecutor and defense counsel requested that the court give the "<u>Allen</u> charge" (Ex. D at 469). The jury returned to the courtroom, and the court stated the following:

> I know that all of you have worked hard to try to find a verdict in this case. It apparently has been impossible for you so far. Sometimes an early vote before discussion can make it hard to reach an agreement about the case later. The vote, not the discussion, might make it hard to see all sides of the case.

> We are all aware that it is illegally permissible for a jury to disagree. There are two things a jury can lawfully do: Agree on a verdict or disagree on what the facts of the case may truly be. There is nothing to agree on about the law. The law is as I told you. If you have any disagreements about the law, I should clear them up for you now. That should be my problem, not yours. If you disagree over what you believe the evidence showed, then only you can resolve that conflict if it is to be resolved. I have only one request of you. By law, I cannot demand this of you, but I want you to go back into the jury room, then taking turns, tell each of the other jurors about any weakness of your own position. You should not interrupt each other or comment on each other's views until each of you has had a chance to talk.

> After you've done that, if you simply cannot reach a verdict, then return to the courtroom and I will declare this case mistried and we'll discharge you with my sincere appreciation for your services.

(Ex. D at 470–71). The jury then continued deliberations from 10:13–11:35 a.m. and returned a verdict at that time (Ex. PD-1, docket entry #191, 192, Ex. D at 472–73).

In the Eleventh Circuit, an <u>Allen</u> charge is improper if under the totality of the circumstances and the language of the charge, the charge was unduly coercive. *See* <u>United States v. Prosperi</u>, 201 F. 3d 1335, 1341 (11th Cir. 2000). A charge that "encourage[s] jurors to reach a unanimous verdict, but also instruct[s] jurors not to give up honestly held beliefs and to return a not guilty verdict if the evidence did not show guilt beyond a reasonable doubt" is not inherently coercive. <u>United States v. Kramer</u>, 73 F.3d 1067, 1072 (11th Cir. 1996). The Eleventh Circuit has approved of the use of an <u>Allen</u> charge which included a request that jurors reconsider their positions,

cautioned that no juror should give up an honest belief, and did not explain the mistrial option. United States v. Chigbo, 38 F.3d 543, 544–45 (11th Cir. 1994).  A judge's request that a jury continue deliberating, without polling the jury or suggesting that an outcome is desired or required, is not inherently coercive.  Prosperi, 201 F.3d at 1341.

The Supreme Court of Florida adopted the Eleventh Circuit's standard of review in addressing Allen charge issues, namely, "whether, under the totality of the circumstances, the trial judge's actions were coercive," and whether the facts and circumstances surrounding an individual case "combined to create a serious risk of coercion."  Thomas v. State, 748 So. 2d 970, 976 (Fla. 1999) (citing United States v. Brokemond, 959 F.2d 206, 208 (11th Cir. 1992)).  The state supreme court has stated that it is recommended, but not required, that the trial court, in the case of an apparent jury deadlock, give an Allen charge prior to declaring a mistrial.  Id. at 978 n.7 (citation omitted).  However, in some instances it may be error to give the charge due to its potentially coercive effect on those jurors who are in the minority.  See id. at 976 (recognizing "that a trial court should not couch an instruction to a jury or otherwise act in any way that would appear to coerce any juror to reach a hasty decision or to abandon a conscientious belief in order to achieve a unanimous position").  Circumstances which should be considered in determining whether the Allen charge was unduly coercive include the length of the deliberations at the time, the lateness of the hour, the condition of the jurors, and the jury's disclosure of their numerical split.  See Thomas, 748 So. 2d at 979.

In the instant case, the circumstances at the time of the Allen charge do not suggest it was unduly coercive.  The jury had been deliberating for only one hour the day the charge was given (they deliberated nearly six hours the night before, but were permitted to go home and return at 8:00 a.m. the following day).  The charge was not given late at night; it was given midmorning.  There is no indication that the condition of the jurors was in any way compromised.  Nor is there a suggestion in the record that the jury indicated its numerical split.  Additionally, the language of the charge was simply a request that the jurors continue deliberating, and it expressly left open the possibility that if jurors disagreed over what they believed the evidence showed, they may not be able to resolve such disagreement, and a mistrial would be declared if they simply could not reach a verdict.  Although the court misspoke by using the phrase "illegally permissible," the internal

inconsistency of the phrase was obvious, and any reasonable person would have known that the court simply misspoke.  Further, after the misstatement, the court clarified that it was permissible for the jury to <u>not</u> reach a verdict, and in such circumstance, the jury would simply return to the courtroom, and the court would declare a mistrial.

The circumstances and language of the <u>Allen</u> charge, as a whole, made it clear that it was permissible for the jury <u>not</u> to reach a verdict.  There is no reasonable probability the jury was confused or misled to believe they were legally required to reach a verdict.  Therefore, Petitioner failed to show he was prejudiced by counsel's failure to object to the <u>Allen</u> charge or request a mistrial or both.  Accordingly, he failed to demonstrate that the state court unreasonably applied <u>Strickland</u> in denying Grounds Three and Four.

> D.    <u>Ground Five: "Fundamental error where essential element of crime not met are [sic] apparent on the face of the record establishing ineffective assistance of appellate counsel denied [sic] the Defendant his right of due process of law under his [sic] Sixth and Fourteenth Amendment[s] of the Constitution of the United States."</u>

Petitioner contends his appellate counsel was ineffective for failing to argue that the evidence was insufficient to sustain a conviction for manslaughter, because it failed to establish the elements of the crime (doc. 1 at 26).  Petitioner asserts appellate counsel should have argued that under Florida law, where the only proof of guilt is purely circumstantial and is not inconsistent with the reasonable hypothesis of innocence presented by the defense at trial, a conviction may not be sustained (*id.*).  He contends appellate counsel was ineffective for not arguing this "fundamental error" (*id.*).  Petitioner states he raised this claim in his state habeas petition (*id.* at 28).

Respondent contends appellate counsel's strategic choice to argue that the State's case was legally insufficient under Florida's "circumstantial evidence" standard, which is more favorable to the defense, was reasonable (doc. 9 at 10).  Further, asserts Respondent, the First DCA's affirmance of the conviction—under the standard more favorable to the defense—demonstrates that a sufficiency of the evidence challenge argued under the less favorable standard (the State's failure to prove each element of the crime) would not have been successful (*id.*).

> 1.    Clearly Established Federal Law

The proper standard for evaluating a claim of ineffective assistance of appellate counsel is the <u>Strickland</u> standard.  *See* <u>Smith v. Robbins</u>, 528 U.S. 259, 285,120 S. Ct. 746, 764, 145 L. Ed.

2d 746 (2000) (citation omitted).   The focus of inquiry under the performance prong of the Strickland standard is whether counsel's assistance was "reasonable considering all the circumstances."  466 U.S. at 691.  Appellate counsel who file a merits brief need not (and should not) raise every nonfrivolous claim but, rather, may select from among them in order to maximize the likelihood of success of on appeal.  Jones v. Barnes, 463 U.S. 745, 753–54, 103 S. Ct. 3308, 3314, 77 L. Ed. 2d 987 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.").  To demonstrate prejudice, Petitioner must show a reasonable probability that, but for his counsel's unreasonable failure to brief a particular issue, Petitioner would have prevailed on appeal.  See Robbins, 528 U.S. at 285.

The Eleventh Circuit has issued several decisions interpreting the Strickland standard with regard to claims of ineffective assistance of appellate counsel.  Appellate counsel cannot be deemed ineffective for failing to raise issues "reasonably considered to be without merit."  United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) (quoting Alvord v. Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984)).  Additionally, where an issue is not preserved for appellate review, appellate counsel's failure to raise the issue is not constitutionally deficient as it is based on the reasonable conclusion that the appellate court will not hear the issue on its merits.  Atkins v. Singletary, 965 F.2d 952, 957 (11th Cir. 1992); Francois v. Wainwright, 741 F.2d 1275, 1285–86 (11th Cir. 1984).  Moreover, the arguments omitted from the appeal must have been significant enough to have affected the outcome of the appeal.  Nyhuis, 211 F.3d at 1344 (citing Miller v. Dugger, 858 F.2d 1536, 1538 (11th Cir. 1988)).

2.       Federal Review of State Court Decision

Petitioner raised this claim as Ground One in his state habeas petition (Ex. I at 7–10).  He argued appellate counsel was ineffective for failing to argue that the State failed to prove the elements of manslaughter (id.).  The First DCA denied the petition on the merits, with no written explanation (Ex. K).

That a state court resolves a constitutional claim without explanation does not lessen the deference its decision is due.  See Wright v. Sec'y for Dep't of Corr., 278 F.3d 1245, 1254 (11th Cir. 2002).   Thus, deference is due to a state court's summary adjudication where neither party

questioned that a federal constitutional issue was raised in and decided by the state court, and where grave doubt as to such did not exist.  *See id.*  In such a situation, the habeas petitioner must show that there was no reasonable basis for the state court to deny relief.  Harrington, 131 S. Ct. at 784 (2011).

In Florida, an appellate court will not reverse a conviction which is supported by competent, substantial evidence.  *See* Donaldson v. State, 722 So. 2d 177 (Fla. 1998); Terry v. State, 668 So. 2d 954, 964 (Fla. 1996).  If, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt, sufficient evidence exists to sustain a conviction.  *See* Banks v. State, 732 So. 2d 1065 (Fla. 1999).  However, if the State's evidence is wholly circumstantial, not only must there be sufficient evidence establishing each element of the offense, but the evidence must also exclude the defendant's reasonable hypothesis of innocence.  *See* Orme v. State, 677 So. 2d 258 (Fla. 1996).  Thus, the State has a higher burden in circumstantial evidence cases.

Petitioner's case was an entirely circumstantial evidence case (*see* Exs. B, C, D).  A Florida defendant's chance of success on appeal is greater in circumstantial evidence cases, because he may argue not only that there was insufficient evidence establishing each element of the offense, but also that the evidence failed to exclude his reasonable hypothesis of innocence.  Petitioner's appellate counsel argued the State failed to present competent substantial evidence showing the victim was dead and that her death occurred as a result of a criminal act by Petitioner (Ex. E at 27), which is the exact argument Petitioner faults her for not making.  Further, Petitioner's appellate counsel argued that the evidence against Petitioner was entirely circumstantial, and there was no "competent, substantial evidence inconsistent with any reasonable hypothesis of innocence" to establish that the victim was dead and that Petitioner killed her (*id.* at 27–35).  The First DCA affirmed the conviction, thereby finding that the State met its higher "circumstantial evidence" burden, and necessarily concluding that there was competent, substantial evidence of each element of manslaughter. Petitioner failed to show deficient performance or prejudice with regard to appellate counsel's argument on the sufficiency of the evidence issue.  Therefore, he failed to demonstrate that the First DCA's denial of this claim was contrary to or an unreasonable application of Strickland.

  E. Ground Six: "Fundamental error where charging indictment was critically defective (i.e. to [sic] vague, indistinct, misleading) divesting trial court of jurisdiction.  Due to

trial/appellate counsels' failure to raise this ground they were prejudicially ineffective and deprived the Petitioner his Sixth and Fourteenth Amendment rights to due process of law and fair and impartial trial."

Petitioner contends the indictment was vague, indistinct, and misleading, because it failed to state a date that a crime occurred or the manner in which the death occurred (doc. 1 at 28–30). He also contends there was no evidence adduced at trial that proved the victim was dead, the time of death, the manner of death, or that any crime was committed in Escambia County (*id.*). Therefore, the trial court was divested of jurisdiction (*id.*).  Petitioner asserts trial counsel and appellate counsel were ineffective for failing to recognize the jurisdictional error (*id.* at 30).  He states he did not raise this claim in state court, because jurisdictional errors may be raised at anytime (*id.*).

Respondent contends Petitioner's jurisdictional argument was not exhausted and should have been raised on direct appeal (doc. 9 at 11).  Respondent additionally argues that the indictment was proper in form and substance, and that nothing indicates Petitioner was not adequately informed of the charge or was impaired in his ability to prepare a defense (*id.*).  Further, by obtaining the indictment and filing it, the State invoked the trial court's subject matter jurisdiction (*id.*). Respondent argues the court's jurisdiction would not be defeated even if the State's case later proved legally insufficient to show even manslaughter (*id.*).  Therefore any attack on the facial sufficiency of the indictment would have been meritless (*id.* at 12).  Accordingly, neither trial counsel nor appellate counsel were ineffective for failing to raise the jurisdictional issue (*id.*).

Petitioner did not raise a claim of jurisdictional error or defect in the indictment on direct appeal or in any state postconviction application (*see* Exs. E, I, L).  Therefore, he procedurally defaulted the claim.  Petitioner did not present the state courts with a claim of ineffective assistance of trial counsel or appellate counsel based upon counsel's failure to object to the indictment or otherwise raise the jurisdictional issue at trial and on direct appeal (*see* Exs. I, L).  Therefore, he cannot show cause for the procedural default.  Ground Six is thus procedurally barred from federal review.

F.      Ground Seven: "Trial counsel was prejudicially ineffective for failing to file a motion to suppress blood evidence found at the alleged crime scene violated [sic] the

Petitioner's Six [sic] and Fourteenth Amendment rights to a fair trial and due process under the United States Constitution."

Petitioner contends his trial counsel performed ineffectively with regard to the admission of evidence presented by the State showing that a small amount of the victim's blood was found on a piece of carpet in Petitioner's bedroom (doc. 1 at 30–35).  Petitioner acknowledges defense counsel elicited testimony from several State's witnesses suggesting that the scene from which the evidence was recovered was not secured for a period of over a month and thus could have been contaminated (*id.* at 31–34).  However, he contends counsel should have filed a pre-trial motion to suppress the "blood evidence" or objected to its admission at trial, on the ground that the trial testimony did not establish how long the victim's blood had been on the carpet, or that its presence was the result of a criminal act (*id.*).  Petitioner states he raised this claim in his Rule 3.850 motion (*id.* at 35).

Respondent appears to concede Petitioner presented this claim in Ground Two of his Rule 3.850 motion (doc. 9 at 12).  Respondent contends the state court's adjudication of the claim was not contrary to or an unreasonable application of Strickland (*id.* at 12–13).

   1.  Clearly Established Federal Law

The Strickland standard, set forth *supra*, governs this claim.

   2.  Federal Review of State Court Decision

Petitioner raised this claim as part of Ground Two of his amended Rule 3.850 motion (Ex. L at 61–63).  The state circuit court adjudicated the claim as follows:

> In his second claim for post-conviction relief, the Defendant argues his counsel was deficient for failing to filing [sic] a "motion to suppress" regarding various pieces of evidence introduced by the State at trial.  This claim, as pled, is insufficient.  All of the Defendant's arguments go to the weight and value of the evidence, not its admissibility.  The Defendant has not sufficiently alleged facts to show the evidence could be considered inadmissible.  As explained by the Third District Court of Appeal, "Relevant evidence is inherently prejudicial; however it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matters."  State v. Andres, 552 So. 2d 1151 (Fla. 3d DCA 1989).  Because the Defendant has not sufficiently alleged how this evidence was inadmissible according to the rules of evidence, or how the evidence was subject to suppression under the exclusionary rule applicable to evidence obtained through a constitutional violation, the Defendant has not alleged how counsel was ineffective for not having filed a "motion to suppress" regarding this evidence.  This claim remains insufficient and should be denied.

(Ex. L at 114–15).

Petitioner's arguments for pre-trial suppression of the evidence and its exclusion at trial go to the weight of the evidence, not its admissibility.  He has not suggested any legal basis for suppression of the "blood evidence" or an objection to its admission at trial.  Therefore, he failed to demonstrate that counsel's performance was unreasonable in this regard.[11]  Further, he failed to show a reasonable probability the trial court would have properly suppressed or excluded the evidence had counsel filed a motion to suppress it or objected to its admission at trial.  Therefore, Petitioner failed demonstrate that the state court's rejection of this claim was unreasonable under Strickland.

G.   Ground Eight:  "Counsel was prejudicially ineffective for failing to investigate and present alibi witness and evidence prejudiced [sic] the defense and violated Petitioner's Sixth and Fourteenth Amendment rights to a fair trial and due process of law."

Petitioner states that Robert Glenn Richburg told Investigator Lee Tyree that he observed the victim walking with Petitioner and an unidentified couple the last night she was seen (doc. 1 at 35–38).  Petitioner states defense counsel provided him with a four-page witness list prior to trial and advised him that Mr. Richburg had died on July 7, 2007 (nine months after Petitioner was indicted and seven months prior to his trial), but Richburg's girlfriend stated his son may be able to provide the same information because he lived with Richburg (id.).  Petitioner states Mr. Richburg also provided the same information to Cleo Marryweather, who was also listed on the witness list provided by defense counsel (id.).  Petitioner contends defense counsel was ineffective for failing to depose Mr. Richburg prior to his death or seek admission of Richburg's statement to Investigator Tyree (id.).

Respondent contends nothing in Petitioner's Rule 3.850 motion mentioned Robert Richburg (doc. 9 at 13).  Therefore, Petitioner did not exhaust this claim in state court and it is procedurally barred from federal review (id.).

_____

[11] Defense counsel did attempt to diminish the probative value of the evidence by eliciting testimony from several witnesses that the crime scene had not been secured for over one month prior to collection of the evidence, the age of the blood stain could not be determined, and the small amount of blood discovered was not consistent with the amount of blood that would generally be present at the scene of a violent crime.

Case No.:  3:11cv576/RV/EMT

In Petitioner's reply, he asserts he mentioned Mr. Richburg's statement to Investigator Tyree on page 27 of his amended Rule 3.850 motion, and he attached a transcript of the statement to his motion (doc. 17 at 30).

Petitioner indeed mentioned Robert Richburg on page 27 of his amended Rule 3.850 motion (Ex. L at 81); however, the issue is not whether he mentioned Mr. Richburg, but whether Petitioner fairly presented the state court with a claim of ineffective assistance of counsel based upon counsel's failure to depose Mr. Richburg prior to his death or seek admission of Richburg's statement to Investigator Tyree.  In Ground Five of the amended Rule 3.850 motion, Petitioner argued defense counsel was ineffective for failing to object to several instances of alleged prosecutorial misconduct and failing to request curative instructions and move for a mistrial (*id.* at 67–83).  Petitioner cited twenty-four examples (consuming seventeen pages) of alleged prosecutorial misconduct to which defense counsel should have objected (*id.*).  As the twenty-third example, Petitioner argued the prosecutor improperly commented upon his alleged attempts to shift suspicion away from himself, to show consciousness of guilt (*id.* at 80–81).  The prosecutor argued that Petitioner called the victim's sister and another woman (Rose White) in an attempt to shift suspicion, and he also used the victim's credit card (*id.*).  The prosecutor argued, "[H]e's set up something to shift the focus of suspicion away from himself because he knows he's the last person seen with Sharon Martin [the victim] . . ." (*id.*).  Petitioner argued these comments were improper, because there was no evidence he attempted to shift suspicion from himself (*id.*).  He argued there were reasonable explanations for his calling the victim's sister and Ms. White (*id.* at 81).  He additionally argued that had defense counsel introduced Robert Richburg's recorded statement into evidence, it could have refuted the prosecutor's remark, "he knows he's the last person seen with Sharon Martin" (*id.*).  He asserted Mr. Richburg's statement would have been admissible, because Richburg had died prior to trial, and Investigator Tyree could have authenticated the statement (*id.*).

Petitioner's argument that defense counsel could have introduced Mr. Richburg's statement, which encompassed only three sentences of his seventeen-page argument that counsel was ineffective for failing to object to several prosecutorial comments, did not fairly alert the state court that he was raising an independent claim of ineffective assistance of counsel based upon counsel's failure to depose Mr. Richburg or seek admission of his statement to Investigator Tyree.  Petitioner

did not argue that defense counsel's failure to introduce Mr. Richburg's statement was in and of itself deficient, unreasonable, or constituted ineffective assistance of counsel, nor did he even mention counsel's failure to depose Mr. Richburg.  Therefore, the undersigned concludes Petitioner failed to exhaust the claim he now raises in Ground Eight.

Moreover, Petitioner's claim is without merit.  Initially, Petitioner does not allege any facts suggesting counsel reasonably should have known that Mr. Richburg would die prior to trial. Additionally, Mr. Richburg's statement to Investigator Tyree, that he last saw the victim with an unidentified couple and Petitioner, was hearsay and did not qualify under any exception to the hearsay rule.[12]   Furthermore, Mr. Richburg's statement, that he last saw the victim with an unidentified couple and Petitioner (*see* Ex. L at 106–08), was not exculpatory and would not have undermined the prosecutor's argument that Petitioner "knows he's the last person seen with Sharon Martin."  Moreover, the jury heard testimony regarding the unidentified couple through Investigator Tyree, who testified Petitioner told him he last saw the victim when she showed an apartment to potential tenants and then told him she did not need a ride home, which he assumed meant she secured a ride home with the potential tenants (Ex. B at 156–57, 159–60).  Petitioner failed to demonstrate defense counsel's failure to depose Mr. Richburg or seek admission of his statement to Tyree was deficient, or that there is a reasonable probability the outcome of trial would have been different had the jury heard Richburg's statement.  Therefore, he is not entitled to relief on Ground Eight.  *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

H.   Ground Nine: "Trial counsel failed to impeach State's witness concerning testimony of the Defendant requesting witness (Jeffrey Thompkins) to help him dump trash can into the dumpster prejudiced the defense and violated Petitioner's Sixth and Fourteenth Amendment rights to a fair trial, effective assistance of counsel, and due process of law."

Petitioner alleges trial counsel failed to object to testimony of Jeffrey Thompkins and failed to request a special jury instruction regarding impeachment of a witness (doc. 1 at 38–41).

---

[12] Although Mr. Richburg was clearly unavailable, his unsworn statement to Investigator Tyree (*see* Ex. L at 106–08) did not qualify as "former testimony" for purposes of that hearsay exception.  *See* Fla. R. Evid. 90.804(2)(a).

Petitioner concedes counsel effectively impeached Thompkins's testimony that, prior to asking Thompkins to help him dump a trash can into a dumpster, Petitioner had never before asked him for help (*id.* at 38–39).  Petitioner also concedes counsel effectively impeached Thompkins's testimony that "something didn't feel right" when he helped Petitioner dump the trash can (*id.* at 39–40). Petitioner further concedes that counsel raised an issue of credibility as to Thompkins's testimony that he asked Petitioner what was in the trash can they dumped (*id.* at 40).  Petitioner contends, however, that counsel "should have objected to the testimony, moved orally to impeach the key state witness and moved for a special jury instruction instructing the jury what impeachment means . . . as toward credibility with his prior inconsistent statement and not as evidence of guilt" (*id.* at 40–41).  Petitioner concedes he did not raise this claim in state court (*id.* at 41).  He states he did not do so because, "Petitioner is doing his legal work pro se and is not an attorney and unless you pay the law clerks at the institution you cannot get adiquit [sic] help from them" (*id.*).

Respondent contends Petitioner failed to exhaust this claim in state court and it is procedurally defaulted (doc. 9 at 14).  Respondent further contends Petitioner failed to satisfy the "cause and prejudice" standard; therefore, he is not entitled to federal review of this claim (*id.* at 14–18).

In Petitioner's reply, he asserts he did not raise this ground in state court because his attorneys (both trial counsel and appellate counsel) led him to believe his claim was frivolous (doc. 17 at 37).

Notwithstanding Petitioner's failure to exhaust this claim, the claim is without merit.  That a witness's testimony is inconsistent with that witness's prior statement is not grounds to object to the testimony; rather, the proper method for handling such inconsistencies is to impeach the witness with the prior inconsistent statement.  This is what defense counsel did with regard to Mr. Thompkins' testimony (Ex. B at 185–95).  Additionally, counsel was not required to "move for impeachment" prior to impeaching the witness with a prior inconsistent statement; therefore, counsel's failure to do so was not unreasonable.  Finally, the jury instructions directed the jury to consider, in weighing the evidence, "did the witness at some other time make a statement that is inconsistent with the testimony he or she gave in court?" (Ex. A at 30–31).  The jury was thus instructed to consider a witness's prior inconsistent statements in assessing credibility.  Petitioner

failed to satisfy the two-pronged <u>Strickland</u> standard with regard to counsel's impeachment of Mr. Thompkins.  Therefore, he is not entitled to relief on Ground Nine.

      I.    <u>Ground Ten:  "Trial counsel was prejudicially ineffective for failing to properly preserve judgment of acquittal for appeal, which denied Petitioner his Sixth and Fourteenth Constitutional Amendment rights to effective assistance of counsel and due process of law."</u>

      Petitioner contends trial counsel was ineffective for making a "boiler plate" and "bare bones" motion for judgment of acquittal ("JOA"), and failing present specific legal arguments that the State failed to prove each element of the crime, including manslaughter, beyond a reasonable doubt and failed to overcome his reasonable hypothesis of innocence (doc. 1 at 42– 43; doc. 17 at 40).  He contends counsel's failure to make these arguments prejudiced him, because they were not preserved for appeal (doc. 1 at 42; doc. 17 at 40).  In support of his claim of lack of preservation, he points to the State's argument of lack of preservation in its answer brief on direct appeal, and contends the First DCA's affirmance of the conviction demonstrates the appellate court agreed with the State's position (doc. 17 at 40–41, 43–44).

      Respondent relies upon the arguments advanced in his answer to Ground One <i>supra</i> and further contends any deficiency in trial counsel's performance was not prejudicial (doc. 9 at 18).

      1.    Clearly Established Federal Law

The <u>Strickland</u> standard, set forth <i>supra</i>, governs this claim.

      2.    Federal Review of State Court Decision

      Petitioner raised this claim as Ground One in his amended Rule 3.850 motion (Ex. L at 58–61).  The state circuit court adjudicated the claim as follows:

      The Defendant claims that his counsel was ineffective in making only a "bare bones" motion for judgment of acquittal.  To properly allege such a claim, a defendant should state sufficient facts to show that "[he] may very well have prevailed on a more artfully presented motion for acquittal based upon the evidence he alleges was presented against him at trial."  <u>See</u> <u>Boykin v. State</u>, 725 So. 2d 1203 (Fla. 2d DCA 1999).  However, "[t]he prejudice in counsel's deficient performance is assessed based upon its effect on the results at trial, not on its effect on appeal." <u>Strobridge v. State</u>, 1 So. 3d 1240, 1242 (Fla. 4th DCA 2009); <u>see also</u>, <u>Carratelli v. State</u>, 961 So. 2d 312, 320–323 (Fla. 2007).

      The record reflects counsel made the following motion at the close of the State's evidence:

DEFENSE COUNSEL:      Judge, the defense at this time would move for a judgment of acquittal. I don't believe the State has established a prima facie case of first degree murder or second degree murder. I think the jury at least or very most that they would have established is possibly manslaughter and I would ask the Court to grant the motion for judgment of acquittal.

> Attachment 5, at 316.

In response, the Court inquired of the State. The State made the following argument:

PROSECUTOR:      Judge, I think there has been evidence from which the jury can infer that the Defendant killed Sharon Martin. There is testimony about the forged check that was written before she disappeared, the fact that she was upset and angry about it when she went to the bank, the fact that her DNA was found on his carpet underneath his carpet all the way down to the concrete slab in the bedroom of his apartment, the fact that a witness testified he helped Mr. Docherty load something very heavy that very night into the dumpster with a truck and flashlight. I think it is a question for the jury and motion should be denied.

> Attachment 5, at 316–317.

In denying the motion for judgment of acquittal, the Court explained:

THE COURT:      *Considering the totality of the facts and whether the State has established at least a prima fascia [sic] case of guilt*, I think the issues do create disputed issues of fact to be considered by the trier of fact. Motion denied.

> Attachment 5, at 317 (emphasis added).

Initially, the Court finds that counsel's presentation of the motion for judgment of acquittal, although arguably not optimal, cannot be considered to constitute "deficient" performance. See R.S. v. State, 639 So. 2d 130 (Fla. 2d DCA 1994); Harris v. State, 647 So. 2d 206 (Fla. 1st DCA 1994). Clearly, the record

shows that counsel put the issue of whether there was sufficient evidence to send the case to the jury squarely before the Court.  The Court made its decision to deny the motion for judgment of acquittal after hearing the State's argument and after considering the "totality of the facts."  Thus, a more "artfully presented" motion for judgment of acquittal would not have been any more likely to have been granted.  In other words, even an intricately detailed and lengthy motion would have been denied.  See Pearce v. State, 880 Sol 2d 561, 571 (Fla. 2004) ("A trial court should not grant a motion for judgment of acquittal unless there is no view of the evidence which the jury might take favorable to the opposite party that can be sustained under the law.").

(Ex. L at 113–14).  Petitioner appealed the decision to the First DCA, and the appellate court affirmed without written opinion (Ex. N).

The trial transcript confirms the state court's findings as to the substance of defense counsel's argument supporting his motion for JOA at the close of the State's presentation of evidence (see Ex. C at 316–17).  The transcript additionally shows that defense counsel renewed the motion at the close of the evidence (id. at 383).

Initially, Petitioner's argument that the First DCA's affirmance of his conviction constituted an endorsement of the State's argument that the sufficiency of the evidence issue was not properly preserved is without merit.  The First DCA affirmed the judgment of conviction without written opinion and with no finding that trial counsel had failed to preserve the sufficiency of the evidence arguments raised by Petitioner's appellate counsel (which were the same arguments Petitioner contends trial counsel failed to preserve below) (see Ex. H).  Further, the state postconviction court found that counsel's failure to argue the motion for JOA in a more artfully or detailed manner did not prejudice Petitioner, because the motion would not have been any more likely to have been granted.  The undersigned cannot say that this conclusion was unreasonable under Strickland, especially in light of the First DCA's rejection of Petitioner's sufficiency of the evidence argument on direct appeal.  See Stephens v. Sec'y, Fla. Dep't of Corr., 678 F.3d 1219, 1227 (11th Cir. 2012) (state postconviction court's conclusion that petitioner was not prejudiced by counsel's making "bare bones" motion for JOA and motion for new trial because, on direct appeal, state court both acknowledged that claims were unpreserved and denied them on the merits by finding there was sufficient evidence to support petitioner's conviction, was not contrary to or an unreasonable

application of clearly established federal law).  Therefore, Petitioner failed to demonstrate he is entitled to relief on Ground Ten.

>   J.   Ground Eleven:  "Trial counsel was prejudicially ineffective for failing to object to the many instances of prosecutorial misconduct, failure to ask court for curative instructions on said misconduct, and failing to move for a mistrial has [sic] deprived Petitioner his Sixth and Fourteenth Constitutional Amendment rights to effective assistance of counsel, right to a fair trial, and due process of law."

Petitioner argues the prosecutor repeatedly testified as an expert during closing argument and rebuttal, improperly attacked defense witnesses and the defense theory, improperly argued facts not in evidence, improperly made several "Golden Rule" violations,[13] improperly argued his personal opinion, improperly made "consciousness of guilt statements," and impermissibly appealed to the superstitions, religious beliefs, and/or fears of the jurors (doc. 1 at 44; doc. 17 at 45–51).  Petitioner contends trial counsel was ineffective for failing to object to the comments, request curative instructions, and move for a mistrial (*id.*).  Petitioner states he raised this claim in his Rule 3.850 motion (doc. 1 at 44).

Respondent concedes Petitioner raised this claim as Ground Five in his amended Rule 3.850 motion (doc. 9 at 19).  Respondent contends the state court record supports the postconviction court's factual findings (*id.*).  Further, the state court tacitly concluded the prosecutor's remarks were either proper or not prejudicial; therefore, a request for curative instructions or mistrial would have been unsupportable (*id.*).  Respondent argues the state court thus reasonably applied Strickland in denying relief (*id.*).

>   1.   Clearly Established Federal Law

The Strickland standard, set forth *supra*, governs this claim.

>   2.   Federal Review of State Court Decision

Petitioner raised this claim Ground Five of his amended Rule 3.850 motion (Ex. L at 67–83). The state circuit court adjudicated the claim as follows:

---

[13] "Golden rule" arguments, which ask the jury to place itself in the victim's shoes, are improper.  *See* Reese v. Sec'y, Fla. Dep't of Corr., 675 F.3d 1277, 1283 (11th Cir. 2012).

In his fifth claim for post-conviction relief, the Defendant asserts that his counsel was ineffective for failing to object to various comments the prosecutor made during closing arguments which the Defendant asserts were improper.

Initially, the Court would note that any claim the prosecutor made an improper closing argument would be cognizable on direct appeal.  By its very terms, Rule 3.850(c) "does not authorize relief based on ground that could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence."  Fla. R. Crim. P. 3.850(c).

Moreover, the Florida Supreme Court has explained that "[t]he proper exercise of closing argument is to review the evidence and to explicate those inferences which may reasonably be drawn from the evidence.  Bertolotti v. State, 476 So. 2d 130 (Fla. 1985).  Attorneys are permitted wide latitude in closing argument.  Gore v. State, 719 So. 2d 1197 (Fla. 1998).

Having carefully reviewed the prosecutor's closing argument, the Court finds that the Defendant has not shown that counsel was ineffective for failing to object to the prosecutor's closing arguments.  Attachment 5, at 390–404; 423–35.  The Defendant has not shown a reasonable probability that, but for counsel's failure to object, the result of the proceeding would have been different or that confidence in the outcome has been undermined.  Sims v. State, 602 So. 2d 1253 (Fla. 1992); Geralds v. State, 35 Fla. L. Weekly S503 (Fla. Sept. 16, 2010).

(Ex. L at 117–18).  Petitioner appealed the decision to the First DCA, and the appellate court affirmed without written opinion (Ex. N).

To assess whether defense counsel performed unreasonably by failing to object to statements by the prosecutor or move for a mistrial, the court must determine whether counsel had a meritorious basis for doing so.  Under Florida law, the standard for reviewing prosecutorial comments is the following:

Wide latitude is permitted in arguing to a jury.  Logical inferences may be drawn, and counsel is allowed to advance all legitimate arguments.  The control of comments is within the trial court's discretion, and an appellate court will not interfere unless an abuse of such discretion is shown.  A new trial should be granted when it is "reasonably evident that the remarks might have influenced the jury to reach a more severe verdict of guilt than it would have otherwise done."  Each case must be considered on its own merits, however, and within the circumstances surrounding the complained-of remarks.

Breedlove v. State, 413 So. 2d 1, 8 (Fla. 1982) (quoting Darden v. State, 329 So. 2d 287, 289 (Fla. 1976)) (other citations omitted).  The prosecutor may not, however, "'inflame the minds and passions of the jurors so that their verdict reflects an emotional response to the crime or the defendant rather than the logical analysis of the evidence in light of the applicable law.'"  Jones v. State, 612 So. 2d 1370, 1374 (Fla. 1993) (quoting Bertolotti v. State, 476 So. 2d 130 (Fla.1985)). This state rule is essentially the same as the federal due process standard governing allegedly improper argument by the prosecution.  A prosecutor may argue both facts in evidence and reasonable inferences from those facts.  Tucker v. Kemp, 762 F.2d 1496, 1506 (11th Cir. 1985) (citations omitted).  But if the evidence is too insubstantial to support a reasonable inference, the prosecutor's comment will be deemed improper.  Id. at 1507.  Prosecutors must observe the distinction between the permissible practice of arguing evidence and suggesting inferences which the jury may reasonably draw from it and the impermissible practice of arguing suggestions beyond the evidence.  See United States v. Simon, 964 F.2d 1082, 1086 (11th Cir. 1992) (citation omitted).

Further, the prosecutor is not limited to a bare recitation of the facts; he may comment on the evidence and express the conclusions he contends the jury should draw from the evidence. United States v. Johns, 734 F.2d 657, 663 (11th Cir. 1984).  A prosecutor may comment on the uncontradicted or uncontroverted nature of the evidence and may point out that there is an absence of evidence on a certain issue during closing argument to the jury.  See White v. State, 377 So. 2d 1149 (Fla. 1980).  Additionally, prosecutorial comment upon a general lack of defense evidence is permissible.  See Smiley v. State, 395 So. 2d 235 (Fla. 1st DCA 1981).

Attempts to bolster a witness by vouching for his or her credibility are improper "if the jury could reasonably believe that the prosecutor indicated a personal belief in the witness' credibility." United States v. Eyster, 948 F.2d 1196, 1206 (11th Cir. 1991) (citing United States v. Sims, 719 F.2d 375, 377 (11th Cir. 1983)).  A jury could believe that the prosecutor personally believed in the witness' credibility "if the prosecutor either places the prestige of the government behind the witness, by making explicit personal assurances of the witness' veracity, or the prosecutor implicitly vouches for the witness' veracity by indicating that information not presented to the jury supports the testimony."  Id. (citation omitted).  Thus, the court must examine whether (1) the prosecutor explicitly personally assured the witness' credibility, or (2) the prosecutor implicitly vouched for

the witness' credibility by implying that evidence not presented to the jury supports the witness' testimony.  United States v. Castro, 89 F.3d 1443, 1457 (11th Cir. 1996) (citing Sims, 719 F.2d at 377).

However, it should be noted that "[t]he prohibition against vouching does not forbid prosecutors from arguing credibility . . . it forbids arguing credibility based on the reputation of the government office or on evidence not before the jury."  United States v. Hernandez, 921 F.2d 1569, 1573 (11th Cir. 1991).  Furthermore, when the prosecutor voices a personal opinion but indicates this belief is based on evidence in the record, the comment is not improper.  United States v. Granville, 716 F.2d 819, 822 (11th Cir. 1983) (finding no prosecutorial misconduct where prosecutor, in effort to support testimony of two government witnesses, only pointed to matters in evidence: the demeanor of one witness and testimony of support witnesses, as well as a tape recording corroborating the testimony of another) (citations omitted).  Likewise, a prosecutor may reply to remarks, comments or assertions made by defense counsel.  See United States v. Young, 470 U.S. 1, 11–13, 105 S. Ct. 1038, 84 L. Ed.2 d 1 (1985) (when prosecutor's comments are an "invited reply" in response to defense counsel's own remarks, and he "[does] no more than respond substantially in order to 'right the scale,' such comments would not warrant reversing a conviction") (citations omitted).

Finally, "the limits of proper argument find their source in notions of fairness, the same source from which flows the right to due process of law."  Houston v. Estelle, 569 F.2d 372, 380 (5th Cir. 1978).  "The relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  Darden v. Wainwright, 477 U.S. 168, 181, 106 S. Ct. 2464, 2471, 91 L. Ed. 2d 144 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974)).  Thus, to establish prosecutorial misconduct, a two-prong test must be satisfied:  (1) the prosecutor's comments must have been improper; and (2) the comments must have rendered the trial fundamentally unfair.  See Eyster, 948 F.2d at 1206 (citations omitted); Brooks v. Kemp, 762 F.2d 1383, 1400 (11th Cir. 1985) (en banc), vacated on other grounds, 478 U.S. 1016, 106 S. Ct. 3325, 92 L. Ed. 2d 732 (1986), reinstated, 809 F.2d 700 (11th Cir. 1987); Dessaure v. State, 891 So. 2d 455, 464–65 (Fla. 2004)

(an order granting mistrial is required only when the error upon which it rests is so prejudicial as to vitiate the entire trial, making a mistrial necessary to ensure that the defendant receives a fair trial).

Upon review of the evidence adduced at trial and the entirety of the arguments of the prosecutor and defense counsel during closing arguments (Exs. B, C, D), the undersigned concludes—as did the state circuit court and the First DCA—that Petitioner failed to show that defense counsel's failure to object to the comments identified by Petitioner (*see* Ex. L at 67–83) constituted deficient performance, or that there is a reasonable probability the outcome of trial would have been different if counsel had objected, requested curative instructions, or moved for a mistrial. Therefore, the state court's adjudication of Petitioner's claim was not an unreasonable application of <u>Strickland</u>.

>   K.     <u>Ground Twelve:  "Trial counsel was prejudicially ineffective for failing to obtain a</u> <u>Chronic Fatigue Syndrome expert to explain the relationship of the syndrome to defense</u> <u>hypothesis of innocence which prejudiced the Defendant and violated his Sixth and</u> <u>Fourteenth Constitutional Amendment rights to effective assistance of counsel, fair trial, and</u> <u>due process of law."</u>

Petitioner asserts the State introduced testimony from the victim's husband that the victim suffered from Chronic Fatigue Syndrome but was not suicidal, and she would not have voluntarily disappeared and left her money behind (doc. 1 at 45–46).  Petitioner contends defense counsel should have hired an expert in the field of Chronic Fatigue Syndrome, who would have testified that persons suffering from the syndrome often cannot make rational choices, become forgetful, and become suicidal but hide such thoughts from their families (*id.* at 44–45).  Petitioner argues had it not been for counsel's error, the result of trial would have been "procedurally different" (*id.* at 46).  He states he raised this claim in his Rule 3.850 motion (*id.* at 47).

Respondent concedes Petitioner raised this claim as Ground Seven in his amended Rule 3.850 motion (doc. 9 at 19).  Respondent contends the state court record supports the postconviction court's factual findings (*id.*).  Further, the state court reasonably concluded the expert testimony would have been inadmissible or so marginally relevant that no prejudice arose from its absence (*id.*).

>   1.     Clearly Established Federal Law

The <u>Strickland</u> standard, set forth *supra*, governs this claim.

2.     Federal Review of State Court Decision

Petitioner raised this claim Ground Seven of his amended Rule 3.850 motion (Ex. L at 84–88). The state circuit court adjudicated the claim as follows:

> In this claim for post-conviction relief, the Defendant claims that his counsel was ineffective for failing to investigate "chronic fatigue syndrome." Calvin Wilson, who was married to the victim, testified that the victim had been diagnosed with chronic fatigue syndrome. Attachment 5, at 124. Wilson also testified that the victim was mentally healthy and was not suicidal to his knowledge. Attachment 5, at 123–124. The Defendant claims that "had counsel investigated chronic fatigue syndrome (CFS) . . . he would have discovered that persons with CFS often cannot make rational choices, become extremely forgetful, and become suicidal but keep their suicidal tendency from their families." The Defendants [sic] asserts that such evidence regarding chronic fatigue syndrome should have been offered to show that the victim may have committed suicide or "made an irrational decision to disappear."
>
> This claim is insufficient. It is true that when the victim's suicide is the defendant's theory of defense, any evidence that tends in any way, even indirectly, to show that the *victim's* death did result from a suicide is admissible. Vannier v. State, 714 So. 2d 470 (Fla. 4th DCA 1998). However, in a prosecution for the killing of a person who has CFS, expert testimony as to general tendencies among people with CFS to commit suicide is inadmissible to show such a suicidal tendency *on the part of the victim*. Even if such evidence was marginally relevant, it would be substantially outweighed by the danger of unfair prejudice. Under the Defendant's theory, the jury should have been asked to infer some degree of possibility that the victim committed suicide because victim [sic] happened to suffer from chronic fatigue syndrome and there is, allegedly, an increased tendency of such people to commit suicide. The purported testimony the Defendant alleges counsel should have sought to introduce into evidence would be misleading to the jury because it would impermissibly suggest that, because of the victim's illness, *she* was suicidal merely because of other person's symptoms. Counsel cannot be considered ineffective for failing to attempt to introduce inadmissible evidence. More importantly, because such evidence would be, at best, only marginally relevant, the Defendant was not prejudiced by counsel's decision not to attempt to introduce such testimony.

(Ex. L at 119–20). Petitioner appealed the decision to the First DCA, and the appellate court affirmed without written opinion (Ex. N).

Counsel's decision whether to call a particular witness is a matter of trial strategy entitled to great deference. Chandler v. United States, 218 F.3d 1305, at 1314 n.14 (11th Cir. 2000) (citing Waters v. Thomas, 46 F.3d 1506, 1512, 1518–19 (11th Cir. 1995) (en banc)). If the record is not

complete regarding counsel's actions, then the courts should presume "that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some reasonable lawyer might do." *Id.* at 1314–15 n.15.  "The mere fact that other witnesses might have been available or that other testimony might have been elicited from those who testified is not a sufficient ground to prove ineffectiveness of counsel."   Waters, 46 F.3d at 1514.  "Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative."  Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978).

The state court reasonably applied Strickland in denying Petitioner's claim.  Initially, Petitioner's assertions as to proposed testimony of an expert on CFS (Petitioner argues in his reply that counsel should have called the victim's doctor as an expert witness) were purely speculative.  He proffered no reliable evidence that the victim's doctor, let alone any expert, would have testified as Petitioner suggested.  Additionally, this federal court must defer to the state court's determination that expert testimony as to general tendencies among people with CFS to commit suicide would have been inadmissible to show that the victim had a suicidal tendency.  *See* Bradshaw v. Richey, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005) (federal habeas court must abide by state court's interpretation of state law); Mullaney v. Wilbur, 421 U.S. 684, 691, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975).  Defense counsel cannot be deemed ineffective for failing to investigate or attempt to introduce inadmissible evidence.  *See* Brownlee v. Haley, 306 F.3d 1043, 1046 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit); Chandler v. Moore, 240 F.3d 907, 917–18 (11th Cir. 2001) (rejecting argument for ineffective assistance of counsel where counsel failed to raise a non-meritorious claim); Meeks v. Moore, 216 F.3d 951, 961 (11th Cir. 2000) (counsel not ineffective for failing to make meritless motion for change of venue); Jackson v. Herring, 42 F.3d 1350, 1359 (11th Cir. 1995) (counsel need not pursue constitutional claims which he reasonably believes to be of questionable merit).  Therefore, Petitioner failed to show that defense counsel's failure to investigate or present testimony from a CFS expert was deficient, or that counsel's failure to do so was prejudicial.  Accordingly, the state court rejection of this claim was reasonable under Strickland.

L.      Ground Thirteen:  "Trial counsel was prejudicially ineffective for failing to object during trial to the State's use of evidence under the 'Williams Rule' has [sic] deprived the Petitioner of his Sixth and Fourteenth Constitutional Amendments rights of effective assistance of counsel, fair trial, and due process of law."

Petitioner asserts the State filed a pre-trial notice of its intent to use "Williams Rule" evidence, that is, similar fact evidence of other crimes, wrong, or acts of the defendant, specifically, evidence that Petitioner forged a check on the victim's checking account prior to her disappearance and twice used her credit card after her disappearance (doc. 1 at 47–48).  Petitioner concedes defense counsel filed a pre-trial objection to the use of this evidence on the ground that the State sought to introduce the evidence solely to prove Petitioner's bad character or his propensity to commit the crime, and the probative value of the evidence was substantially outweighed by its prejudicial effect (*id.*).  Petitioner appears to argue counsel should have renewed this objection at trial (*id.* at 48).  He also appears to argue counsel should have argued that the evidence was not actually Williams Rule evidence, because it was inseparable from the crime charged or was inextricably intertwined with the crime charge (*id.* at 48–49).  He asserts such evidence was admissible under section 90.401 of the Florida Evidence Code, because it was a relevant and inseparable part of the act which was at issue (*id.*).  Petitioner concedes he did not raise this claim in state court and explains he did not do so because he only realized the legal error while he was researching a related claim (*id.* at 49).

Respondent asserts an exhaustion defense (doc. 9 at 20).  Respondent contends the claim is procedurally barred, and Petitioner's simply overlooking the claim when preparing his Rule 3.850 motion and amended motion does not constitute cause for the procedural default (*id.* at 15–17, 20).

In Petitioner's reply brief, he asserts prejudice on the part of the trial judge (who also presided over the postconviction proceedings) as cause for his failure to exhaust this claim (doc. 17 at 54–63).  He contends the state circuit judge would have denied the claim, because the judge denied all of his other postconviction claims; therefore, including it in his Rule 3.850 motion would have been futile (*id.* at 63).

That the state circuit judge simply ruled adversely to Petitioner does not demonstrate personal bias or pervasive prejudice on the part of the judge, such that Petitioner was unable to obtain full and fair review of his claim.  Further, any adverse ruling by the state circuit judge was appealable to the First DCA.  Petitioner obviously knew this, because he in fact appealed the state

circuit court's denial of his Rule 3.850 motion.  Moreover, even if it was likely that Petitioner's claim would have been denied by the state courts, he should have presented it.  *See* <u>Waldrop v. Jones</u>, 77 F.3d 1308, 1315 (11th Cir. 1996) (rejecting petitioner's contention that futility of challenging jury instruction in state court was cause to excuse his failure to raise it on direct appeal) (citing <u>Engle v. Isaac</u>, 456 U.S. 107, 130, 102 S. Ct. 1558, 71 L. Ed. 2d 783 (1982) ("futility of presenting an objection to the state courts cannot alone constitute cause for a failure to object at trial.")).  Therefore, Petitioner has not shown cause for his failure to raise this claim of ineffective assistance of counsel in the state courts.

Notwithstanding the failure to exhaust, the claim is without merit.  The record demonstrates defense counsel filed a written objection to the State's notice of its intent to introduce <u>Williams</u> Rule evidence (Ex. A at 13).  A hearing was held just prior to jury selection, and the court determined the evidence was admissible for the purpose of establishing motive (Ex. B at 90–95).  Defense counsel requested that the court give a limiting instruction to the jury both at the time of admission of the evidence and in the closing jury instructions (*id.* at 95–96), and those instructions were given (Ex. C at 225, Ex. D at 444).  Additionally, defense counsel renewed his objection when the State sought to admit evidence of the forged check, and the court again overruled counsel's objection (*id.* at 119).  Although defense counsel did not renew his objection when the State sought to admit the evidence of Petitioner's use of the victim's credit card, Petitioner failed to demonstrate a reasonable probability the trial court would have reversed its  prior ruling if counsel had renewed his objection.  Moreover, Petitioner's argument that counsel should have argued that the evidence was not actually <u>Williams</u> Rule evidence, because it was inseparable from the crime charged or was inextricably intertwined with the crime charged and was thus admissible under section 90.401 of the Florida Evidence Code, is frivolous.  No competent counsel would oppose admission of unfavorable evidence offered for a limited purpose, on the ground that it was wholly admissible under another provision of law.  Petitioner failed to show deficient performance or prejudice with respect to counsel's opposing the admission of evidence that Petitioner forged a check on the victim's checking account and used her credit card.  Therefore, he is not entitled to relief on Ground Thirteen.

## V.        CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 4th day of October 2012.


/s/ Elizabeth M. Timothy
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**